ADEPT LAW FIRM
JOSEPH S. FOGEL [SBN 156746]
E-mail: joe@adeptlawfirm.com
16133 Ventura Boulevard, Penthouse Suite
Encino, California 91436-2403
*telephone*     (818) 986-7100
*fax*              (818) 986-7106

*Attorneys for Plaintiff*
         FRANKIE MITCHELL

UNITED STATES DISTRICT COURT FOR THE

FOR THE CENTRAL  DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKIE MITCHELL;<br><br>             Plaintiff,<br>     v.<br><br>NEW YORK LIFE INSURANCE COMPANY, a business entity, form unknown; and DOES 1 through 15, Inclusive;<br><br>             Defendants. | Case No. 2:20-cv-01789-MCS (AGR)<br><br>PLAINTIFF'S CONTENTIONS OF LAW AND FACT<br><br>PRETRIAL CONF.: June 7, 2021<br>TIME: 2:00 p.m.<br><br>TRIAL: June 22, 2021<br><br>Hon. Mark C. Scarsi, Judge Presiding |

COMES NOW, Plaintiff Frankie Mitchell, to provide the following summary of Plaintiff's Contentions of Law and Fact:

1. INTRODUCTION.

The person insured on a life insurance policy passed away. The beneficiary at that time is Plaintiff Frankie Mitchell. But the life insurance company has not paid the benefits, and has not provided much of a response as why the benefits have not been paid and what it did to try to pay those benefits.

This is a breach of contract case against an insurance company. Plaintiff will seek to amend and renew the insurance bad faith complaint (Count Two) on which the Court granted Defendant's motion for summary judgment, in part, on March 8, 2021.

The life insurance policy was sold by the insurer's solicitation of the insured, Richard Stevens. Mr. Stevens made his sister, Laura Mitchell, the beneficiary when he purchased the policy. As the company permits, the owner of the policy and the beneficiary of the policy were changed several times over the years. Plaintiff Frankie Mitchell is the nephew of Richard Stevens, by being Laura Mitchell's son.

For the Plaintiff, Stephanie Tennis, the fiancé of Plaintiff, will testify, about Plaintiff's efforts to obtain payment on his claim, and the insurance company's refusal to deal fairly with his claim, and to pay the policy benefits.

Richard Stevens has two children, Linda Marks and Anthony Stevens, each of whom will testify that their father was a brother to Laura Mitchell, that each of them were at earlier times owners and beneficiaries of the policy, and that Plaintiff Frankie Mitchell is the beneficiary who should be paid by the insurer.

The insurance company claims person known to Plaintiff who spoke with the Plaintiff and Ms. Tennis about the claim and policy, Nicole Holland.

The policy should be paid to Plaintiff. While the policy is not high-dollar policy, the payment is important to Plaintiff and his family. The insurer's lack of clear communications, in an investigation that was entirely one-sided towards getting a plausible reason to avoid paying the policy, is very serious.

1 2. FURTHER FACTS SUPPORTING PLAINTIFF'S ALLEGATIONS.

2 The life insurance policy was sold to Richard Stevens on his own life on March 31, 2012. This made his sister the beneficiary on the policy on his life. As permitted by the life insurance company, after the policy was sold, there were various changes made to the beneficiary of the policy, and to the owner of the policy. None of those changes are disputed by the defendant.

On September 30, 2019, Richard Stevens passed away, outside of Sacramento where he lived. At that time, Plaintiff Frankie Mitchell was the owner of the policy, had made the premium payments on the policy, and was the beneficiary on the policy. On October 16, 2019, Plaintiff made his claim for benefits.

To date, his claim for benefits has not been paid, or denied, nor has the policy been rescinded. Instead, the defendant life insurance company made a cursory and slight investigation, and decided to "stonewall" Plaintiff's claim. Plaintiff hired counsel to pursue his claim and other rights.

Following arguments on March 8, 2021, the Court granted a summary adjudication on the Plaintiff's second cause of action, insurance bad faith. Plaintiff will seek to amend the Complaint to conform with proof after trial testimony, to show that the refusal of the insurance company to pay the benefits was without reasonable justification and was in bad faith. Plaintiff will seek to show that the actions of the insurance company as to the investigation of the claim were pre-determined, to support an already made decision to not pay the claim. Plaintiff will seek to show that the decision to not pay the claim is unreasonable, and subjects the insurance company to extra-contractual damages.

The defendant insurance company has failed to fairly and adequately investigate the claim, with an open mind to paying the claim.

Mr. Stevens had two adult children, Linda Marks and Anthony Stevens. There is no requirement that a parent name only their children as their life

insurance beneficiaries. Each of the adult children has submitted a declaration stating that they know that Plaintiff was the beneficiary at the time of the insured's passing.

3. LAW SUPPORTING PLAINTIFF'S ALLEGATIONS.

An insurance policy is a special type of contract, because many insurance policies are never called upon to pay benefits. When an insurance policy has a claim made on it, the insurance company needs to investigate the claim fairly, giving every opportunity to pay the claim, and not only seeking to deny the claim. The insurance company must communicate frequently and with enough information to be meaningful, to assist the claimant in knowing what the insurance company is doing to pay the claim.

While an insurance policy is a special type of contract, many ordinary contract principals apply. Wrongful failure to provide coverage or defend a claim is a breach of contract." (*Isaacson v. California Insurance Guarantee Assn.* (1988) 44 Cal.3d 775, 791. The insurance policy should be paid.

4. THE DEFENSES TO THE POLICY PAYMENT ARE INADEQUATE, INSUFFICIENT, AND GIVE RISE TO INSURANCE BAD FAITH.

An insurance company is required to try to pay the claim, unless there is sufficient information showing that a claim does not fall under the requirements of the policy, or other cause for not paying the claim. The investigation, and the reasoning of the insurance company, must be communicated regularly to the insured while the claim is pending, and be sufficient to inform the insured of what is going on to get the claim paid, or otherwise determined.

The insurance company has not paid the claim, has not denied the claim, and has not taken action on the policy. The insurance company has not communicated about the policy or claim (outside of mediation) in a long time.

The defendant life insurance company asserts another defense, that is entirely built upon suspicion, not fact. Defendant insurer argues that the sister took out the policy, making herself the beneficiary, without the brother's knowledge. Then, the Defendant insurer goes a step further, to argue that because the sister was only raised since being a baby with the family of her brother, not formally adopted, that the sister cannot be considered a sister, because of the insurable interest requirement.

The Defendant insurer defenses fail on the facts: the insured was sold the policy, not the sister. The insured took out the policy, paid the premiums (until further changes were made) and the insured could certainly name his sister as the beneficiary. A sister, whether by informal adoption, putative adoption, or simply by growing up together, is more than a sufficient insurable interest under California law. The purpose of insurable interest is to prevent "gambling" on the lives of strangers; the evidence showing a family relationship is more than sufficient to satisfy the insurable interest requirement. The evidence shown by Plaintiff supports finding breach of contract, and more.

5. THE FACTS SHOWN AT TRIAL ARE LIKELY TO SHOW THAT NOT ONLY WAS THE CONTRACT BREACHED, BUT THAT THE BREACH IS IN BAD FAITH.

While the insurance contract has an implied obligation of good faith and fair dealing, the insurer's unreasonable breach of that covenant gives rise to the additional count of insurance bad faith. For the insurer to fulfill its obligation not to impair the right of the insured toreceive the benefits of the agreement, it again must give at least as much consideration to the latter's interests as it does to its own." (*Egan v. Mutual of Omaha Insurance Co.* (1979) 24 Cal.3d 809, 818-819 [169 Cal.Rptr. 691, 620P.2d 141].)

If an insurer "fails to deal fairly and in good faith with its insured by

refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing. . . . [¶] . . . [W]hen the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." (*Gruenberg v. Aetna Insurance Co.* (1973) 9 Cal.3d566, 574-575 [108 Cal.Rptr. 480, 510 P.2d 1032], original italics.)

[A]n insurer may breach the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim." (*Egan v. Mutual of Omaha Insurance Co.* (1979) 24 Cal.3d 809, 817 [169 Cal.Rptr. 691, 620 P.2d 141].) "[T]o establish the insurer's 'bad faith' liability, the insured must show that the insurer has (1) withheld benefits due under the policy, and (2) that such withholding was 'unreasonable' or 'without proper cause.' The actionable withholding of benefits may consist of the denial of benefits due; paying less than due; and/or unreasonably delaying payments due." (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1209 [87 Cal.Rptr.3d 556], internal citations omitted.)

"[I]f the insurer denies benefits unreasonably (i.e., without any reasonable basis for such denial), it may be exposed to the full array of tort remedies, including possible punitive damages." (*Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th1062, 1073 [56 Cal.Rptr.3d 312].)

At trial, the actions of the insurer to pay the claim, as well as to investigate the claim, will be weighed. "To fulfill its implied obligation, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests. When the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort. And an insurer cannot reasonably and in good faith deny payments to its insured without fully investigating the grounds for its denial." (*Frommoethelydo v. Fire Insurance Exchange* (1986) 42 Cal.3d208, 214-215 [228 Cal.Rptr. 160, 721 P.2d 41],

internal citation omitted.)

Defendant insurance company did not thoroughly investigate the claim. Instead, the insurance company determined to not pay the claim, without justification, failing to communicate the state or purposes of the investigation to the beneficiary.

6. AFTER THE JURY FINDS THAT THE INSURANCE BENEFITS MUST BE PAID, PLAINTIFF WILL MOVE THE COURT FOR AN ADDITIONAL AMOUNT OF ATTORNEYS FEES AND COSTS, INCURRED IN OBTAINING THE POLICY BENEFITS, PURSUANT TO CALIFORNIA LAW.

When an insured has to hire a lawyer to get the policy benefits paid, the insurance company is liable for the attorneys fees incurred. The lead case that allows for attorney fees and litigation costs is *Brandt v. Superior Court (Standard Ins. Co.)*, (1985) 37 Cal.3d 813, 817. In *Brandt*, the California Supreme Court established an exception to the general contract rule that each party bears its own attorney fees. *Brandt* allows recovery of attorney fees incurred in obtaining contract benefits when the insurer's withholding of those benefits was in bad faith.

7. CONCLUSION

The evidence at trial, witness testimony, and documents admitted into evidence, are expected to show that the insurance policy was not only breached by the insurer, but that the breach was in bad faith. The policy benefits and other damages should be paid.

DATED: May 18, 2021          ADEPT LAW FIRM

By: *Joseph S. Fogel* /s/
JOSEPH S. FOGEL,
*Attorney for Plaintiff,*
FRANKIE MITCHELL